**IN THE UNITED STATES DISTRICT COURT
FOR THE  NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION**

| | |
|---|---|
| **KANIKA BROWN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Civil Action No.** |
| | ) |
| **RESOURCEMFG, a division of** | ) |
| **EMPLOYBRIDGE; and** | ) |
| **YAMAHA MOTOR MANUFACTURING** | ) |
| **CORPORATION OF AMERICA,** | ) |
| a corporation | ) **JURY DEMAND** |
| | ) |
| **Defendants.** | ) |

**COMPLAINT**

COMES NOW the Plaintiff, KANIKA BROWN (hereinafter "Brown"), by and through her attorney of record, and for her Complaint against the Defendants YAMAHA MOTOR MANUFACTURING CORPORATION OF AMERICA (hereinafter "Yamaha") a corporation, AND RESOURCEMFG, a division of EMPLOYBRIDGE, (hereinafter "ResourceMFG") a corporation, and shows the court as follows:

**I.**     **NATURE OF THE COMPLAINT**

1

1. Brown brings this action for damages, and reasonable attorney fees against Defendants ResourceMFG, and Yamaha for violations of her rights under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12111 et seq. ("ADAAA"), the Civil Rights Act of 1991, 42 U.S.C. § 1981, et. seq. ("Section 1981"),  Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), and the Age Discrimination Act.

II.   **JURISDICTION AND VENUE**

2. Brown invokes the jurisdiction of this court pursuant to 28 U.S.C. § 1331 (Federal question), 42 U.S.C. §2000e et. seq., (Title VII) 42 U.S.C. §1981 (Civil Rights Act), 42 U.S.C. §12111 et. seq. (ADAAA), the Age Discrimination Act, and 28 U.S.C. 1343(3) (depravation of constitutional or Federal statutory right).

3. Venue is proper pursuant to 28 U.S.C. §1391, the Age Discrimination Act, 42 U.S.C. §1981, 42 U.S.C. §2000e et. seq., and 42 U.S.C. §12111 et. seq. as the unlawful employment practices alleged in this Complaint were committed within this district.

III.  **PARTIES**

4. Brown is an African American Female with a Disability over the age of forty (40) and is a citizen of the United States of America subject to the jurisdiction of this Court.

2

5.     At all times relevant, Defendant, ResourceMFG was qualified and licensed to do business in Georgia, and at times material hereto has conducted business within this District.

6.     At all times relevant, Defendant, Yamaha was qualified and licensed to do business in Georgia, and at times material hereto has conducted business within this District.

7.     At all such times, Plaintiff was an "employee" of Defendants as defined under the ADA at 42 U.S.C. § 12111(4). During all times relevant hereto, the Defendants had employed fifteen (15) or more employees for the requisite duration under Title VII and the ADA. 42 U.S.C. §12111(5) and 42 U.S.C. 2000e(b).

## IV.     ADMINISTRATIVE PROCEDURES

8.     There are no statutory prerequisites for 42 U.S.C. 1981, and the claims are filed within four years of the alleged actions. 28 U.S.C. 1658(a); See *Jones v. R.R. Donnelley & Sons Co.,* 541 U.S. 369 (US 2004); *Baker v. Birmingham Board of Education*, 531 F.3d 1336 (11th Cir. 2008).

9.     On March 9, 2023, Brown filed her EEOC Charge number 410-23023-04022 against the Defendant Yamaha alleging age, disability, race and sex discrimination and retaliation.

10.   On March 13, 2023, Brown filed her EEOC charge number 410-2023-04834 against the Defendant ResourceMFG alleging age, disability, race, and sex discrimination and retaliation.

11.   On September 21, 2023, the EEOC issued its Right to Sue letter for charge number 410-2023-04834 against the Defendant ResourceMFG.

12.   On September 28, 2023, the EEOC issued its Right to Sue letter for charge number 410-2023-04834 against Defendant Yamaha.

13.   Brown timely filed this lawsuit within 90 days of receipt of her right to sue.

## V.   **FACTUAL ALLEGATIONS**

14.   ResourceMFG is the manufacturing division of the EmployBridge group of temporary staffing companies.

15.   ResourceMFG provides staffing services to a wide variety of clients and specializes in manufacturing positions, including temporary, temp-to-hire, and direct hire positions.

16.   ResourceMFG's corporate office is in Duluth, Georgia.

17.   Temporary associates are required to immediately report any suspected discrimination, harassment, or retaliation to any member of ResourceMFG's management and to follow up with the CEO, COO, or CFO if needed.

18.    Yamaha contracts with temporary staffing agencies such as ResourceMFG to supply workers on a short-term basis.

19.    The short-term workers placed at Yamaha can become permanent employees of Yamaha

20.    Yamaha provides ResourceMFG with a job description for the position Yamaha needs to fill, and ResourceMFG selects and assigns one of its employees that it believes is qualified to fill the position.

21,    ResourceMFG screens, interviews, conducts drug testing, and runs background checks on candidates.

22.    Temporary employees who are placed at Yamaha are expected to follow Yamaha policies and are supervised by an employee at Yamaha.

23.    Yamaha retains the power to end a temporary employee's assignment or hire the employee on permanently.

24.    ResourceMFG can also terminate employment or end an assignment of an employee.

25.    Yamaha operates a manufacturing facility in Newnan, Georgia.

26.    The Newnan facility manufactures golf cars, all-terrain vehicles ("ATVs"), personal watercraft, and recreational offroad vehicles.

27.    Brown was employed by ResourceMFG and placed with Yamaha in the Newnan facility as a Loader on December 8, 2022.

28.     Brown was responsible for loading parts into a machine, and her shift was from 9:30pm to 5:30am.

29.     Upon hire, Brown was told that she would be moved to a different position to work with a machine, as other loaders do.

30.     Brown was never moved to work with the machine, yet new young, white, male employees were quickly moved to the machine.

31.     Working with the machines provided opportunities to advance and become a blue shirt/ permanent employee.

32.     On or about January 12, 2023, Brown complained to Martin, HR at Yamaha, about a co-worker who stayed on the phone during the entire shift every night.

33.     This co-worker caused Brown's shift to be far more laborious as she had to handle the work without him.

34.     Specifically, Brown complained "Only the white guys are allowed to do these things" and attached a video of Brandon hiding behind boxes and playing on his phone.

35.     Brandon was not disciplined or terminated for his behavior.

36.     In mid-January, Brown went to Matthew, a supervisor at Yamaha, and complained, "all the guys got put on the machines before she did".

37.     Being placed on the machines is a better position as it was less physical labor and gave employees opportunity for advancement and the opportunity to receive a blue shirt and become a permanent employee.

38.     On or about January 20, 2023, Brown went Urgent Care as a piece of metal went through her work boot and foot.

39.     Brown notified Martin in HR at Yamaha of her on the job injury/disability, but she never received an incident report.

40.     Due to her injury/disability, Brown was unable to stand the duration of her shift.

41.     Standing is a daily life activity which was affected by her disabled foot.

42.     In this message, she told Martin that she thought they were trying to get rid of her for saying something to him previously.

43.     In this message, she told Martin, "Hopefully, the next African American employees won't have to endure these things".

44.     On or about January 30, 2023, Brown verbally complained to Brandon Tarver, her supervisor at ResourceMFG of discriminatory practices and retaliation.

45.     On or about February 1, 2023, Ms. Brown memorialized her conversation with Brandon Tarver, her supervisor at ResourceMFG that took place on January 30, 2023, in an email.

46.     In her conversation on January 30 and email on February 1, 2023, Brown outlined the retaliation she was experiencing after her complaints of discrimination.

47.     Specifically, Brown stated a Yamaha co-worker warned her that she needed to be careful because they were threatening to kill her, and that Kyle was going to terminate her when he got back allegedly because she "can't hang in the department".

48.     The co-worker told Brown they were going to "run me out of here", "try to get rid of me" and "Do bodily harm".

49.     The co-worker told her to be careful and to watch her back.

50.     Brown complained the "young men" have been unable the do the job she has been doing and have all quit claiming it was too much.

51.     Brown stated she was the "last woman standing in the loading department".

52.     Brown stated she came in when she is sick, hurting and exhausted, and her only absences were due to a "piece of metal going

through the bottom of her foot, and she is unable to stand the duration of the shift".

53.     Brown told Tarver she suspected Kyle, Matthew and Walt of being the upper management who may have has this person warn her of the threats.

54.     Brown notified Tarver that the person she complained of not working every night, horseplaying, smoking, vaping, was caught on his phone again and just walked out of his shift 30 minutes early.

55.     Brown explained most employers have a no tolerance policy for people who have retaliated against someone because they had gone to HR to make complaints.

56.     Brown complained retaliation can be in the form of keeping someone in the same position, when you should be rotating everyone so they have the opportunity to learn and be on the machines, stopping that individual from getting promotions, or their blue shirt to become a permanent employee.

57.      Brown complained she was working three (3) times as hard as all the guys in the department and getting paid less.

58.     Brown complained five (5) new hires came in weeks after she did, but "They were all placed on the machines before me".

59.   Brown complained she felt like she was working in a hostile work environment and requested an investigation.

60.   Brown explained to Tarver she took the threats very seriously, she was going to file a police report, and would provide him a copy of the police report.

61.   On or about February 9, 2023, Brown texted Joe at Yamaha about retaliatory threats she was receiving, and he responded it was not "what he say" not so much as how he say it and claimed Brown's co-worker Lester was the messenger.

62.   On or about February 9, 2023, Brown contacted Wykethia Blackmon, head of the welding group at Yamaha and explained this is why she is requesting help to get out of the department. She copied her on the police report of death threats that she had received.

63.   Brown also provided her daughter's phone number to Blackmon in case something happened to her.

64.   On or about February 20, 2023, Brown was terminated.

65.   Brown was told she was being terminated because she had too many points.

66.   But Brown's only absences were due to her work-related injury and she should not have received points for those absences.

67.     Brown was never told why she was not given an incident report.

68.     Brown is African American.

69.     Brown is female.

70.     Brown is over the age of 40.

71.     The white, male, young employees made more money than Brown per hour.

72.     The white, male, young employees were allowed to leave work, not work, play on their phones, smoke on their shift, and horseplay through out the night and were not docked points, disciplined, or terminated.

73.     Brown was not warned, counseled, written up or disciplined for attendance.

74.     Brown was terminated because she complained of discrimination.

## VI.  CLAIMS

### COUNT 1- RETALIATION

75.     Brown has established a convincing mosaic of circumstantial evidence that the Defendant's retaliated against her when she engaged in a protected activity.

76.   Brown engaged in a protected activity when she made the following complaints:

a. On or about January 12, 2023, Brown complained to Martin in HR at Yamaha, "only white guys" were allowed to stay on their phone all night and not work;

b. In mid-January, 2023, Brown complained to Matthew a supervisor at Yamaha, "all the guys" were being placed on the machines before she was ;

c. On or about January 20, 2023, Brown complained to Martin in HR at Yamaha that she believed everyone was retaliating against her for talking to him previously and that may the African American employees that follow her won't have to go through what she is going through;

d. On or about January 30, 2023, Brown verbally complained to her supervisor, Brandon Tarver at ResourceMFG about discriminatory practices and retaliation;

e. On or about February 1, 2023, Brown emailed her supervisor Brandon Tarver about discrimination and retaliation;

f. On February 9, 2023, Brown complained to Joe at Yamaha about the retaliatory threats she was receiving.

    g. On February 9, 2023, Brown requested to be moved to another department an provided another supervisor her children's phone number in case something happened to her due to the retaliatory threats she received.

77.  Shortly after engaging in the above-stated protected activities employees of the Defendants began to retaliate against her, harass her, threatened to kill her, and told her to watch her back.

78.  The Defendants retaliated against Brown when they ratified these employees actions, when they took no steps to determine who made the threats, when they simply explained the co-worker who told Brown of the threat was just the messenger, when they failed to provide Brown an incident report for her on the job injury, when they docked her absences points for her on the job injury, when they allowed other workers to not work all night without discipline causing Brown's position to be more laborious, when they refused her training on machines which was less strenuous work, and foreclosed opportunities to become a blue-shirt permanent employee, and then terminated her employment from Yamaha and ResourceMFG.

79.  Defendants' actions would dissuade a reasonable person in Brown's position from engaging in a protected activity.

80.   The Defendants have not stated a legitimate non-discriminatory reason for most of the retaliatory actions listed above.

81.   The Defendants stated reason for her termination are pretext as Brown had no performance issues and should not have been docked points for her on the job injury, and she had never been counseled, written up, or disciplined regarding her attendance.

82.   As a proximate cause and cause in fact of said retaliation, the Plaintiff was caused to suffer the following injuries and  damages; lost wages (front and back pay with interest); lost benefits; compensatory damages, including but not limited to: damage to career, shame, humiliation, embarrassment, stress, anxiety, anger, helplessness, fear for her safety, worry about how she is going to take care of her family, emotional distress, pain, suffering, and out of pocket expenses.

## COUNT 2- RETALIATORY HOSTILE WORK ENVIRONMENT

83.    Brown has established a convincing mosaic of circumstantial evidence that the Defendant's created a retaliatory hostile work environment against her when she engaged in a protected activity.

84.   Brown engaged in a protected activity when she made the following complaints:

a. On or about January 12, 2023, Brown complained to Martin in HR at Yamaha, "only white guys" were allowed to stay on their phone all night and not work;

b. In mid-January, 2023, Brown complained to Matthew a supervisor at Yamaha, "all the guys" were being placed on the machines before she was;

c. On or about January 20, 2023, Brown complained to Martin in HR at Yamaha that she believed everyone was retaliating against her for talking to him previously and that may the African American employees that follow her won't have to go through what she is going through;

d. On or about January 30, 2023, Brown verbally complained to her supervisor, Brandon Tarver at ResourceMFG about discriminatory practices and retaliation;

e. On or about February 1, 2023, Brown emailed her supervisor Brandon Tarver about discrimination and retaliation;

f. On February 9, 2023, Brown complained to Joe at Yamaha

g. On February 9, 2023, Brown requested to be moved to another department an provided another supervisor her children's phone number in case something happened to her.

85.   Shortly after engaging in the above-stated protected activities employees of the Defendants began to retaliate against her, harass her, threatened to kill her, and told her to watch her back.

86.   The Defendants created a retaliatory hostile work environment against Brown when they ratified these employees actions, when they took no steps to determine who made the threats, when they simply explained the co-worker who told Brown of the threat was just the messenger, when they failed to provide Brown an incident report for her on the job injury, when they docked her absences points for her on the job injury, when they allowed other workers to not work all night without discipline causing Brown's position to be more laborious, when they refused her training on machines which was less strenuous work, and foreclosed opportunities to become a blue-shirt permanent employee, and then terminated her employment from Yamaha and ResourceMFG.

87.   The conduct was offensive to a reasonable person in Brown's position as it was extremely severe and pervasive as employees threatened to kill Brown, she was in fear for her safety, she was required to stand on her foot for the duration of her shift, and she was terminated for false reasons.

88.   Defendants' actions would dissuade a reasonable person in Brown's position from engaging in a protected activity.

89.   The Defendants have not stated a legitimate non-discriminatory reason for most of the retaliatory actions listed above.

90.   The Defendants stated reasons for her termination are pretext as Brown had no performance issues, and should not have been docked points for her on the job injury, and she had never been counseled, written up, or disciplined regarding her attendance.

91.   As a proximate cause and cause in fact of said retaliatory hostile work environment, the Plaintiff was caused to suffer the following injuries and  damages; lost wages (front and back pay with interest); lost benefits; compensatory damages, including but not limited to: damage to career, shame, humiliation, embarrassment, stress, anxiety, anger, helplessness, fear for her safety, worry about how she is going to take care of her family, emotional distress, pain, suffering, and out of pocket expenses.

## COUNT 3-RACE DISCRIMINATION

92.   Brown has established a convincing mosaic of circumstantial evidence that she suffered from disparate treatment due to her race.

93.   Brown is African American.

94.   Brown was not allowed to sit on her phone, horseplay, smoke, and vape all shift long as her white co-workers were.

95.   Brown was required to work three (3) times harder than her white co-workers who sat around on their phone, horseplayed, vaped, and smoked all night without repercussions.

96.   Brown was not paid as much as her white co-workers

97.   Brown was denied opportunities to train on the machines which is a less strenuous position as were white co-workers were.

98.   Brown was denied the opportunity to become a blue-shirt permanent employee because she was not given the opportunity to work the machines as her white co-workers were.

99.   Brown was not given an incident report for her workplace injury as other white co-workers were.

100.   Brown was terminated for "attendance", when her white co-workers would leave early and not perform work at all while on duty.

101.   For each of the above-stated differences in treatment Brown's race was a motivating factor.

102.   The Defendants have not stated a legitimate non-discriminatory reason for most of the actions listed above.

103. The Defendants stated reasons for her termination are pretext as Brown did not have performance issues, should not have been docked points

for her on the job injury, and she had never been counseled, written up, or disciplined regarding her attendance.

104.   As a proximate cause and cause in fact of said disparate treatment, the Plaintiff was caused to suffer the following injuries and damages; lost wages (front and back pay with interest); lost benefits; compensatory damages, including but not limited to: damage to career, shame, humiliation, embarrassment, stress, anxiety, anger, helplessness, fear for her safety, worry about how she is going to take care of her family, emotional distress, pain, suffering, and out of pocket expenses.

## COUNT 4-GENDER DISCRIMINATION

105.   Brown has established a convincing mosaic of circumstantial evidence that she suffered from disparate treatment due to her gender.

106.   Brown is female.

107.   Brown was not allowed to sit on her phone, horseplay, smoke, and vape all shift long as her male co-workers were.

108.   Brown was required to work three (3) times harder than her male co-workers who sat around on their phone, horseplayed, vaped, and smoked all night without repercussions.

109.   Brown was not paid as much as her male co-workers.

110.   Brown was denied opportunities to train on the machines which is a less strenuous position as were male co-workers were.

111.   Brown was denied the opportunity to become a blue-shirt permanent employee because she was not given the opportunity to work the machines as her male co-workers were.

112.   Brown was not given an incident report for her workplace injury as other male co-workers were.

113.   Brown was terminated for "attendance", when her male co-workers would leave early and not perform work at all while on duty.

114.   For each of the above-stated differences in treatment Brown's sex/gender was a motivating factor.

115.   The Defendants have not stated a legitimate non-discriminatory reason for most of the actions listed above.

116. The Defendants stated reasons for her termination are pretext as Brown did not have performance issues, should not have been docked points for her on the job injury, and she had never been counseled, written up, or disciplined regarding her attendance.

117.   As a proximate cause and cause in fact of said disparate treatment, the Plaintiff was caused to suffer the following injuries and damages; lost wages (front and back pay with interest); lost benefits;

compensatory damages, including but not limited to: damage to career, shame, humiliation, embarrassment, stress, anxiety, anger, helplessness, fear for her safety, worry about how she is going to take care of her family, emotional distress, pain, suffering, and out of pocket expenses.

## COUNT 5- AGE DISCRIMINATION

120.   Brown has established a convincing mosaic of circumstantial evidence that she suffered from disparate treatment due to her age.

121.   Brown is over the age of forty (40).

122.   Brown was not allowed to sit on her phone, horseplay, smoke, and vape all shift long as her younger co-workers were.

123.   Brown was required to work three (3) times harder than her younger co-workers who sat around on their phone, horse played, vaped, and smoked all night without repercussions.

124.   Brown was not paid as much as her younger co-workers

125.   Brown was denied opportunities to train on the machines which is a less strenuous position as were younger co-workers were.

126.  Brown was denied the opportunity to become a blue-shirt permanent employee because she was not given the opportunity to work the machines as her younger co-workers were.

127.   Brown was not given an incident report for her workplace injury as other younger co-workers were.

128.   Brown was terminated for "attendance", when her younger co-workers would leave early and not perform work at all while on duty.

129.   For each of the above-stated differences in treatment Brown's age was a motivating factor.

130.  The Defendants have not stated a legitimate non-discriminatory reason for most of the actions listed above.

131. The Defendants stated reasons for her termination are pretext as Brown did not have performance issues, should not have been docked points for her on the job injury, and she had never been counseled, written up, or disciplined regarding her attendance.

132.   As a proximate cause and cause in fact of said disparate treatment, the Plaintiff was caused to suffer the following injuries and damages; lost wages (front and back pay with interest); lost benefits; compensatory damages, including but not limited to: damage to career, shame, humiliation, embarrassment, stress, anxiety, anger, helplessness, fear for her safety, worry about how she is going to take care of her family, emotional distress, pain, suffering, and out of pocket expenses.

## COUNT 6-ADAAA- FAILURE TO ACCOMMODATE

132.  Brown has established a convincing mosaic of circumstantial evidence that the Defendants did not accommodate her for disability.

133.  Brown became disabled when a piece of metal went through her work boot causing damage to her foot.

134.  As a result of said injury to her foot Brown was unable to stand for the duration of her shift.

135.  Standing is a daily life activity which was affected by her disability.

136.  Nonetheless, Brown was able to perform the essential functions of her job as she was able to complete her work, without performance issues, and worked three (3) times as hard as her non-disabled co-workers who just sat around, horse played, smoked, vaped and left the job early.

137.  Brown requested to be off for doctor visits for treatment for her foot and to rest her disabled foot, but instead of being accommodated she was docked points for said absences and terminated.

138.  The Defendant engaged in no formal interactive process to determine the precise nature of the disability to discuss any accommodations, if necessary.

139.   There would have been no burden on the Defendants to allow Brwon to leave early as they commonly allowed other workers to sit on their phone all night, horseplay, smoke, vape and leave early on a regular basis.

140.   Instead, the Defendants chose to simply terminate her for her false reasons.

142.   As a proximate cause and cause in fact of the unlawful failure to accommodate, Brown was caused to suffer the following injuries and damages: termination from her position, lost wages (front and back pay with interest); lost benefits, compensatory damages, including, but not limited to: damage to career, shame, humiliation, embarrassment, stress, anxiety, anger, helplessness, emotional distress, pain, suffering, and out of pocket expenses.

## COUNT 7-ADAAA DISCRIMINATORY DISCHARGE

143.   Brown has established a convincing mosaic of circumstantial evidence that the Defendants did not accommodate her for disability.

144. Brown became disabled when a piece of metal went through her work boot causing damage to her foot.

145. As a result of said injury to her foot Brown was unable to stand for the duration of her shift.

147. Standing is a daily life activity which was affected by her disability.

148. Nonetheless, Brown was able to perform the essential functions of her job as she was able to complete her work, without performance issues, and worked three (3) times as hard as her non-disabled co-workers who just sat around, horse played, smoked, vaped and left the job early.

149. Brown requested to be off for doctor visits for treatment for her foot and to rest her disabled foot, but instead of being accommodated she was docked points for said absences and terminated.

150. The Defendant engaged in no formal interactive process to determine the precise nature of the disability to discuss any accommodations, if necessary.

151. There would have been no burden on the Defendants to allow Brwon to leave early as they commonly allowed other workers to sit on their phone all night, horseplay, smoke, vape and leave early on a regular basis.

152. Instead, the Defendants chose to simply terminate her for her false reasons.

153. Thus, Driver was terminated *because* of his disability.

154. As a proximate cause and cause in fact of the unlawful and discriminatory discharge, Brown was caused to suffer the following injuries and damages: termination from his position, lost wages, (front and back pay with interest); lost benefits; compensatory damages, including, but not

limited to: damage to career, shame, humiliation, embarrassment, stress, anxiety, anger, helplessness, emotional distress, pain, suffering, and out of pocket expenses.

## VII.   DAMAGES

1.     The Plaintiff was caused to suffer lost wages (front and back pay with interest), lost benefits, damage to career, damage to reputation, shame, humiliation, embarrassment, stress, anxiety, anger, fear, helplessness, emotional distress, loss of sleep, pain, suffering, and out of pocket expenses.

2.     Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful policies and practices set forth herein unless enjoined by this Court.

3.     The Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein, and this suit for back pay and front pay (both with interest), compensatory damages, punitive damages, attorney's fees, expenses, costs, injunctive relief, and declaratory judgment is his only means of securing adequate relief.

## VII.   PRAYER FOR RELIEF

WHEREFORE, the plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

26

1.     Enter an Order requiring the defendant to make the plaintiff whole by awarding her reinstatement, lost wages (back and front pay plus interest), compensatory and punitive damages, out of pocket expenses, loss of benefits, including retirement, pension, seniority, and other benefits of employment.

2.     The Plaintiff further prays for such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorney's fees and expenses.

**THE PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY.**

Respectfully Submitted,

**BARRETT & FARAHANY**
s/ *Kira Fonteneau*
Kira Fonteneau
Georgia Bar No. GA103355
Counsel for Plaintiff

Mailing Address: P.O. Box 530092
Atlanta, Georgia 30353-0092
(404) 214-0120
Email: kira@justiceatwork.com

*s/ Patricia A. Gill*
Patricia A. Gill[1]
ASB-0780-I66P

---

[1] Application for Pro Hac Vice will be forthcoming with the court.

**BARRETT & FARAHANY**
2 20TH Street North, Suite 900
Birmingham, AL 35203
Phone 205-564-9005
Direct: 205-390-1953
Email: trish@justiceatwork.com
*Attorneys for the Plaintiff*

s/Patricia A. Gill _____
OF COUNSEL